UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAI DAVID ROMERO GARCIA,                Case No. 25-cv-13407

      Petitioner,                          Hon. F. Kay Behm
v.                                       United States District Judge

KEVIN RAYCRAFT, *et. al.*,

      Respondents.

_____ /

## OPINION AND ORDER GRANTING THE PETITION FOR A WRIT OF HABEAS CORPUS (ECF No. 1)

## I.    PROCEDURAL HISTORY

On October 19, 2025, Petitioner Alai David Romero Garcia, a Venezuelan citizen, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that he is being unlawfully detained by Respondents at the Calhoun County Correctional Center in Battle Creek, Michigan in violation of the Immigration and Nationality Act ("INA") and the Due Process clause of the Fifth Amendment. ECF No. 1.

Respondents, who include Secretary of the United States Department of Homeland Security Kristi Noem, United States Attorney General Pamela Bondi, Executive Office for Immigration Review, Todd

Lyons, Acting Director of Immigration and Customs Enforcement, and Immigration and Customs Enforcement Detroit Field Office Director Kevin Raycraft, argue that Petitioner's detention is not unlawful under the INA, specifically 8 U.S.C. § 1225(b)(2), and does not violate his Due Process rights.  Respondents also urge the Court to refrain from deciding the merits of the petition until Romero Garcia administratively exhausts his claims and to either deny the petition, or dismiss all Respondents except for Raycraft.  ECF No. 7, PageID.128.

This case is one of an ever-growing number of challenges in this District, and across the country, to noncitizen detentions arising out the Department of Homeland Security's current interpretation of the Immigration and Nationality Act.  This court, along with at least seven other judges in this District as of writing, have joined their peers nationwide to conclude that the interpretation being advanced by the Government, which would require the mandatory detention of hundreds of thousands, if not millions, of individuals currently residing within the United States, is contrary to both the plain text of the statute and the overall statutory scheme.  *See, e.g.*, *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, --- F. Supp. 3d ---, 2025 WL 2496379 (E.D. Mich. Aug. 29,

2025) (McMillion, J.); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025) (White, J.); *Gimenez Gonzalez v. Raycraft*, No. 25-CV-13094, 2025 WL 3006185 (E.D. Mich. Oct. 27, 2025) (Kumar, J.); *Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695 (E.D. Mich. Nov. 7, 2025) (Behm, J.); *Jimenez Garcia v. Raybon*, No. 2:25-CV-13086, 2025 WL 2976950 (E.D. Mich. Oct. 21, 2025) (DeClercq, J.); *Contreras-Lomeli v. Raycraft*, No. 2:25-CV-12826, 2025 WL 2976739 (E.D. Mich. Oct. 21, 2025) (Ludington, J.); *Gonzalez v. Raycraft*, No. 25-13502, 2025 WL 3218242, (E.D. Mich. Nov. 17, 2025) (Michelson, J.); *Diego v. Raycraft*, No. 25-13288, 2025 WL 3159106 (E.D. Mich. Nov. 12, 2025) (Levy, J.).

For the reasons below, this court reaches the same conclusion as it did previously, finds that oral argument is not necessary to decide the petition pursuant to LR 7.1(f)(2), **GRANTS** the petition for a writ of habeas corpus, and orders that Petitioner receive a bond hearing as provided under 8 U.S.C. § 1226 within seven days of entry of this order, or else be released immediately.

## II.   FACTUAL BACKGROUND

The relevant facts are straightforward.  Petitioner Romero Garcia is a Venezuelan citizen who has resided in the United States since 2022, until his arrest by ICE on October 15, 2025, while at work on a valid work authorization.  ECF No. 1.[1]  Petitioner is a 20-year-old national of Venezuela. He entered the United States as an unaccompanied child on December 18, 2022, and has lived here ever since.  Upon entering the United States, he was transferred to the custody of the Office of Refugee Resettlement (ORR).  In March 2023, when he turned 18, DHS released him on his own recognizance.  Petitioner applied for and was granted Temporary Protected Status (TPS) by DHS in 2024, which was valid until April 2025.  He also filed for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) in December 2024. Petitioner was placed in removal proceedings in 2023, but in 2024 the Chicago Immigration Court terminated his removal proceedings based on his TPS status and pending asylum application.  As of the date of his petition, Petitioner's asylum application remains pending before the USCIS Chicago Asylum Office.  On October 15, 2025, Petitioner was

---

[1] All facts are taken from the Petition, and are not contested for purposes of the issues presented.

arrested by DHS in East Dundee, Illinois, while at work.  Petitioner

works for a company that installs and repairs lighting and electric signs

at gas stations and convenience stores.  Petitioner has valid work

authorization, granted by DHS in June of this year, through June 15,

2030.  He has also been compliant with the terms of his release on

recognizance.  ICE agents initially detained him at the Broadview

Processing Center in Broadview, Illinois, but was transferred to the

Calhoun County Correctional Center in Battle Creek, Michigan, on

October 20, 2025, where he remains detained.  Petitioner has no

criminal history apart from minor traffic violations.  Petitioner alleges

that his father and uncle live in Illinois and provide him with support

and care while encouraging his independence as a young adult.

Petitioner has a partner who lives in Illinois, with whom he has a loving

and supportive relationship of about a year, and whose family he is

close with.  He has a group of close friends who he met through

evangelical youth groups in the Chicago area.  He has community ties

from several jobs in landscaping, delivery work, and electric

installations and repairs.

Petitioner is charged with having entered the United States without inspection and remains in mandatory detention.

## III.  ANALYSIS

Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).  "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from [her] within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).  A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law.  28 U.S.C. § 2241.  If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief.  § 2243.

## A.     Raycraft is the proper Respondent

Broadly, the present Petition presents the same legal issues this court previously considered in *Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695 (E.D. Mich. Nov. 7, 2025).  As explained below, the court largely adopts its reasoning in that decision rather than repeat itself as to each step of the analysis.

However, one new issue raised by Respondents merits attention. Unlike in *Morales-Martinez*, Respondents now contest that any Respondent was properly named in this petition in light of *Aguilar v. Dunbar*, Civil No. 25-12831 (E.D. Mich.), ECF No. 20 (transferring immigration habeas case to Western District), because the warden of the Calhoun County Jail was not named in this Petition. Fundamentally, the dispute boils down to an issue that has been addressed previously by courts in this circuit: whether *Rumsfeld v. Padilla*, 542 U.S. 426 (2004) superseded *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003).  In *Roman*, the Sixth Circuit held that the INS District Director[2] for the district where a detention facility is located is

---

[2] INS' "District Directors" are the same as today's ICE Field Office Directors. *Kholyavskiy v. Achim*, 443 F.3d 946, 948 n.1 (7th Cir. 2006).

the proper respondent for a petitioner facing removal proceedings, because the District Director has power over that petitioner.  340 F.3d at 320.  In *Padilla*, the Supreme Court rejected that logic of legal "power" over a person's physical custody as a general matter and held that in habeas, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."  542 U.S. at 435.  However, while setting a general rule, the Court explicitly left open the question of "whether [a remote supervisory official] is a proper respondent to a habeas petition filed by an alien detained pending deportation."  *Padilla*, 542 U.S. at 435 n.8.  Courts in this district and circuit have therefore found that specifically for habeas proceedings with petitioners facing deportation, *Roman*'s rule still applies, because application of that rule was explicitly left open by *Padilla*.  *See Khodr v. Adduci*, 697 F. Supp. 2d 774, 776 (E.D. Mich. 2010) (Murphy, J.); *Parlak v. Baker*, 374 F. Supp. 2d 551, 557 (E.D. Mich. 2005) (Cohn, J.); *Hango v. McAleenan*, No. 1:19-CV-606, 2019 U.S. Dist. LEXIS 211697, at *4 (N.D. Ohio Dec. 9, 2019) (applying *Roman* rather than *Padilla* because *Padilla* does not apply to detainment pending removal); *Orozco-*

*Valenzuela v. Holder*, No. 1:14 CV 1669, 2015 U.S. Dist. LEXIS 44697,
2015 WL 1530631, at *4 (N.D. Ohio Apr. 6, 2015) (holding ICE Field
Office Director Rebecca Adducci was the proper party in § 2241 habeas
action of alien challenging his detention, without a bond hearing,
pending removal); *Rosario v. Prindle*, No. 11-217-WOB-CJS, 2011 U.S.
Dist. LEXIS 150602, 2011 WL 6942560, at *2 (E.D. Ky. Nov. 28,
2011) (ICE field director proper respondent in habeas petition
challenging continued detention pending reconsideration of denial of
removal appeal); *but see, e.g.*, *Gjoliku v. Chertoff*, No. 06-11747, 2006
U.S. Dist. LEXIS 45498, at *3 n.1 (E.D. Mich. Jun. 26, 2006) (O'Meara,
J.) (transferring a habeas petition to the Western District of Michigan
after concluding that the Calhoun County jail warden was the
appropriate immediate custodian and noting that "*Roman* was decided
before the Supreme Court decision in *Padilla* . . . and cannot be
reconciled with it."). The court finds the former set of cases more
convincing.

There is no dispute in this posture that Romero Garcia is
currently in removal proceedings. ECF No. 1, PageID.9; ECF No. 7,
PageID.126. Therefore, *Roman* controls, ICE Field Director Raycraft is

a proper Respondent to Romero Garcia's petition, and Raycraft does not

otherwise challenge this court's jurisdiction or venue.  ECF No. 7,

PageID.128.[3]

## B.      Petitioner's detention without bond is contrary to the plain language of the Immigration and Nationality Act

Respondent advances two arguments as to Petitioner's detention

under the INA: first, that the court should require administrative

exhaustion, and second, that Romero Garcia is properly detained under

§ 1225(b)(2).  Both arguments have been brought previously before this

court, and are without merit.

### i.      Administrative Exhaustion

Before determining the merits of this petition, the court must first

address Respondents' argument that it should require Petitioner to

---

[3] To the extent that Respondents' brief could perhaps be read to imply other defects, Respondents do not clearly explain any other argument and the court considers unexplained arguments waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting citation omitted); *see Kanai v. McHugh*, 638 F.3d 251, 258 (4th Cir. 2011) (holding that "any challenge to habeas proceedings based on" lack of territorial jurisdiction "is waived if not timely asserted.").

exhaust his administrative remedies before he is permitted to proceed with his habeas petition.  The court finds that exhaustion is not necessary, for the reasons explained in *Morales-Martinez*, 2025 WL 3124695.

While adopting its prior analysis entirely, in short the court agrees with the majority of district courts in this circuit and around the nation in deciding not to enforce an exhaustion of administrative remedies requirement for these kinds of habeas petitions, because all three factors regarding prudential exhaustion weigh against imposing an exhaustion requirement.  *See, e.g.*, *Casio-Mejia v. Raycraft*, 2025 WL 2976737, at *5 (E.D. Mich. Oct. 21, 2025) (collecting cases).  Because administrative review in this instance would be futile, and because every additional day in unlawful detention presents a hardship for Petitioner, the court declines to impose an exhaustion requirement upon Romero Garcia and will address the merits of his petition.  *See Lopez-Campos*, 2025 WL 2496379, at *5.

### i.      Statutory and Regulatory Framework

At issue are the meaning of two related provisions of the Immigration and Nationality Act: 8 U.S.C. § 1225(b)(2), and 8 U.S.C.

11

§ 1226(a).  Congress established these two statutes to principally govern detention of noncitizens pending removal proceedings.  8 U.S.C. §§ 1225 and 1226.  The first – Section 1225 – is a mandatory detention provision; the second statutory provision – Section 1226 – provides for a discretionary detention framework.  8 U.S.C. § 1225, 1226(a).  There is no dispute that noncitizens arrested and detained under Section 1226(a) have a right to request a custody redetermination (i.e. a bond hearing) before an Immigration Judge.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

For nearly thirty years, Respondents and the federal courts recognized that noncitizens who entered the United States without inspection and were apprehended years later were eligible for a bond hearing before an immigration judge under 8 U.S.C. § 1226(a), because they were not deemed "arriving" or "seeking admission," were not subject to § 1225(b)(2), and were therefore entitled to a custody hearing.  Thus, individuals who previously entered without inspection and are subsequently placed in removal proceedings receive bond hearings if ICE chooses to detain them, unless their criminal history renders them ineligible.

However, on July 8, 2025, Immigration and Customs Enforcement (ICE), "in coordination with" the Department of Justice, issued "Interim Guidance Regarding Detention Authority for Applicants for Admission," which instructed all ICE employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who initially entered the United States without inspection—to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2), no matter how long they have resided in the United States.

## ii.   Lawfulness of Petitioner's Detention under the INA

The central question to this habeas petition is which detention framework properly applies to a Venezuelan citizen who has lawfully lived in the United States for several years, was never lawfully admitted to the country, and is now facing removal proceedings. Respondents say § 1225(b)(2)(A), Romero Garcia says § 1226(a).

Broadly, Respondents' interpretation is that any noncitizen present unlawfully in the United States is perpetually "seeking admission" to the United States and is subject to the mandatory detention statute in § 1225(b)(2). ECF No. 5, PageID.58. That

interpretation is inconsistent with ordinary dictionary meaning, existing precedent, historical practice, and the structure and text of the INA.  The structure of these provisions of the INA accomplish two different goals.  Section 1225 is "framed [] as a part of the process that 'generally begins at the Nation's borders and ports of entry, where the Government must determine whether [noncitizens] seeking to enter the country are admissible.'"  *E.g.*, *Rosado v. Figueroa, et al.*, No. 2:25-cv-02157, 2025 WL 2337099, at *8 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018)); *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *7 (E.D. Mich. Aug. 29, 2025).  Section 1226(a), on the other hand, applies to the process of "arresting and detaining" noncitizens who are already living "inside the United States" but still subject to removal (like Petitioner).  *Jennings*, 583 U.S. at 288.  Put simply, Section 1225 applies to noncitizens "arriving to the country" and Section 1226 governs detention of noncitizens "already in the country."  *Id.*  Although other courts have ably delved into the subject in more detail, both the legislative history and decades of consistent agency practice support this reading of the statute.  *See, e.g.*, *Pizarro Reyes*, 2025 WL 2609425, at *7.

14

This court previously engaged in a detailed exercise of statutory interpretation to explain why Section 1226(a) applies to persons like Petitioner; it is not necessary to repeat that entire analysis here.  It is sufficient to say that the court adopts its prior analysis in full.  *See Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695 (E.D. Mich. Nov. 7, 2025).  But in summary: a broad consensus of district courts have agreed that "§ 1225 clearly establishes an inspection scheme for when to let noncitizens into the country" and "governs the *entrance* of noncitizens to the United States," and no more.  *E.g.*, *Pizarro Reyes*, 2025 WL 2609425, at *5; *Barrera v. Tindall*, No. 25-541, 2025 U.S. Dist. LEXIS 184356, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (holding the text of § 1225 is focused "on inspections for noncitizens when they arrive" and "suggest[s] [it] is limited to noncitizens arriving at a border or port and are presently 'seeking admission' into the United States.").  Respondents' arguments to the contrary have been soundly rejected in, as far as the court can tell, very nearly every district court that has heard them.  *Morales-Martinez*, 2025 WL 3124695, at *6 (collecting cases and rejecting the same arguments made here).  This court agrees with the overwhelming

majority viewpoint and sees no reason to reverse its own prior legal conclusions.  "A decision of a federal district judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."  18 Moore's Federal Practice 3d § 134.02[1][d].  However, "[a] court should give considerable weight to its own previous decisions unless and until they have been overruled or undermined by the decision of a higher court or a statutory overruling."  *Id.* at § 134.02[1][a].

Therefore, Section 1226(a) is the appropriate statutory framework for determining bond for noncitizens who are already in the country and facing removal.  Romero Garcia has resided in the United States for several years and was arrested while on a work permit in Illinois, not upon arrival at the border or a port of entry.  Under § 1226(a), Petitioner is entitled to a discretionary bond determination hearing. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).  Because Romero Garcia has been detained without having received such a hearing, he is in federal custody in violation of federal law.  His habeas petition will thus be granted, and Respondent Raycraft will be directed to provide Romero Garcia with a bond hearing under § 1226(a) or otherwise release him.

16

## C.    Due Process

The court declines to decide the merits of Petitioner's due process claim, given that the court herein grants the relief he seeks based on its interpretation of the applicability of § 1226(a).  If Respondents do not provide Petitioner with a bond redetermination hearing or release him within the time ordered, Petitioner may renew his Fifth Amendment Due Process claim.

## IV.   CONCLUSION

Therefore, the court **GRANTS** the petition for writ of habeas corpus (ECF No. 1).  It is therefore **ORDERED** that:

1. Respondent Raycraft shall provide Romero Garcia with a bond hearing under § 1226(a) on or before **November 26, 2025**, or otherwise release him; and

2. Respondent Raycraft shall file a status report to certify compliance with this order on or before **December 1, 2025**. The status report shall detail when Petitioner was released or when his bond hearing occurred, if bond was granted or denied, and—if bond was denied—the reasons for the denial.

Although Petitioner opposes dismissal of any named Respondents, Petitioner cites to *Gimenez Gonzalez v. Raycraft*, No. 25-CV-13094, 2025

WL 3006185, at *5 (E.D. Mich. Oct. 27, 2025), which dismissed all Respondents except Raycraft and Attorney General Bondi.  As that court did, and to ensure that Respondents maintain authority to enforce this court's grant of habeas relief and order that Petitioner receive a bond hearing or, alternatively, be released even if Petitioner is transferred out of the district under Raycraft's control, the court will not dismiss Attorney General Bondi as a Respondent to these proceedings.  *See id.*  All Respondents except for Acting ICE Field Office Director Kevin Raycraft and Attorney General Bondi are **DISMISSED** without prejudice.

The court retains jurisdiction to enforce the terms of this order.

**SO ORDERED**.

Date: November 21, 2025                    s/F. Kay Behm
                                           F. Kay Behm
                                           United States District Judge